IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CAMERON CURRY,**<br>   a/k/a "Loot,"<br><br>   *Defendant.* | Case No. 24-cr-252 (JMC) |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following Sentencing Memorandum. Defendant Cameron Curry (hereinafter "defendant" or "Curry") stole sensitive financial information and used it as leverage for extortionate demands. The defendant sent dozens of email messages to his former employer for more than a month and persisted until disruption by law enforcement. The government submits that the defendant should be sentenced to 24 months in prison, which is the statutory maximum for a single count but lower than the United States Sentencing Guidelines (hereinafter "Guidelines") range as calculated by the parties and Presentence Report (hereinafter "PSR").

### INTRODUCTION

Defendant Cameron Curry, who used the moniker "Loot" in this scheme, pleaded guilty to Count One of the Indictment on September 27, 2024. Count One of the Indictment charged the defendant with Interstate Communications with Intent to Extort (threat to injure property or reputation), in violation of Title 18, United States Code, Section 875(d).

**THE OFFENSE CONDUCT**

Defendant Curry engaged in a scheme that spanned almost six weeks, repeatedly emailing employees of his former employer (hereinafter "Company 1") with threats to disclose highly sensitive employee data. Between December 11, 2023 and January 24, 2024, the defendant, using the moniker "Loot," sent over 60 emails to Company 1 employees with the intention of inducing Company 1 to pay him $2.5 million.

The defendant started working for Company 1 as a contract data analyst employee with Company 2 in August of 2023. His contract was anticipated to last six months to work on building report automation of data files containing employee and payroll information for all of Company 1's employees, providing him with access to the employee data used in this scheme. Company 1 terminated Defendant Curry's contract employment in December 2023. Curry was notified on December 5, 2023 that his contract employment would end by December 15, 2023. The same day Curry received this notice, he downloaded sensitive corporate employee data files to his corporate laptop before removing those files to unauthorized, personal devices for use in his extortionate scheme. As of two days later, on December 7, 2023, the defendant could not be reached and was reported as absent from work. This led Company 2 to end Curry's contract employment on December 8, 2023.

Three days later, on December 11, 2023, the defendant created the email address lootsoftware@outlook.com and began using it to extort Company 1. In his emails, Curry threatened to publish employee compensation data to all Company 1 employees in the interest of "salary transparency." Curry stated that his demanded payment amount of $2.5 million was "firm" and "will not be negotiated." Some of his emails also provided deadlines for Company 1 to respond. In addition to compensation information, the Company 1 data at issue included the

2

employees' names, dates of birth, and home addresses. Curry also threatened to report Company 1 to the U.S. Securities and Exchange Commission (SEC) in an effort to negatively affect Company 1's stock prices unless Company 1 met his demands.

In response to the defendant's emails, Company 1 implemented cybersecurity incident response procedures, reported the situation to law enforcement, and began negotiations with the defendant to avoid the release of its sensitive employee data. Company 1 made a test payment of Bitcoin worth approximately $2,479.80 to Curry on January 9, 2024. Curry withdrew the payment funds the same day. In an email message after receiving payment, Curry demanded a reduced remaining amount of $1.5 million. He reduced the demanded amount because he disclosed some of Company 1's sensitive data to demonstrate his ability to follow through with his extortionate threats. He demanded payment of the remaining amount in 7-10 days. Company 1 made a second payment to Curry on January 24, 2024 in the amount of $5,062 of Bitcoin. Curry again withdrew the funds the same day.

The defendant's efforts to complete his scheme continued even after he knew law enforcement had identified him. On January 24, 2024, the FBI arrived at Curry's residence in Charlotte, North Carolina to execute a search warrant. He refused to exit his apartment as directed by law enforcement. While agents were trying to convince Curry to comply, Curry sent multiple emails to Company 1 threatening to disclose the stolen employee data if the FBI attempted to arrest him.

Additional digital evidence obtained in the investigation demonstrates the defendant's state of mind. The FBI was unable to create a forensic copy of Curry's personal laptop pursuant to the search warrant because he had restored it to its factory settings in an effort to delete evidence. Law enforcement was not able to identify the precise timing of this deletion and therefore did not seek

an obstruction charge. Additionally, a message Curry sent to an ex-girlfriend stated, "Im a millionaire now because you motivated me when you said you was pregnant and gave me an idea. Hellcats, BMW, & Ram truck for me with a beautifully house by the water while traveling, shopping, and investing. . . . Here is the proof check the dates. I get 1.3 million Wednesday." These acts show that Curry was aware of the illegality of his conduct and intended to use the funds for his personal gain.

## SENTENCING GUIDELINES

The government agrees with the United States Sentencing Guidelines calculation as laid out in the PSR.[1] Under the Guidelines, the defendant's adjusted offense level is 25. The base offense level for Interstate Communications with Intent to Extort, in violation of 18 U.S.C. § 875(d), is 9 pursuant to U.S.S.G. § 2B3.3(a). PSR ¶ 43. Because the amount demanded exceeded $1,500,000, 16 levels are added. USSG §§ 2B3.3(b)(1)(B) and 2B1.1(b)(1)(I). PSR ¶ 44. A three-level reduction, pursuant to USSG § 3E1.1(a) and (b), is warranted because the defendant demonstrated responsibility by pleading guilty. PSR ¶¶ 50-51. The defendant has no criminal history points, placing him in Criminal History Category I. The defendant is eligible for a Zero Point Offender adjustment pursuant to USSG §4C1.1, resulting in an additional two-point reduction. PSR ¶ 49. With a total offense level of 20 and Criminal History Category of I, the recommended imprisonment range is 33 months to 41 months. As stated above, the Guidelines are limited by the statutory maximum sentence of 24 months for a violation of 18 U.S.C. § 875(d). *See* USSG §5G1.1(a).

---

[1] As of the time of this filing, only the draft PSR was available. Accordingly, all of the citations herein cite the draft version filed as ECF No. 34.

## THE 18 U.S.C. § 3553(a) FACTORS

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims. 18 U.S.C. § 3553(a)(1)-(7).

   A. <u>The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense</u>

The government submits that the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of the offense weigh in favor of the maximum sentence permitted by statute. First, the defendant's extortionate acts were committed deliberately, intentionally, and, but for law enforcement interruption, would have persisted. These were not crimes committed on an impulse, nor were they the product of a failure to think. The defendant plainly considered his actions and then continued down a determined path – which included advanced planning to download the sensitive data and create an email account from which to send the emails – all in pursuit of self-enrichment.

Second, a significant period of incarceration is warranted to reflect the seriousness of the offense. Upon notification of Curry's termination from Company 1, Curry devised a scheme to extort Company 1. Exploiting his position of trust, he downloaded and transferred sensitive files from Company 1's corporate network. Curry then created a fake moniker to hide his identity, developed fake documents to demonstrate his authenticity, and threatened employees with

5

arbitrary deadlines for communications and payments to compel attention and compliance. Defendant Curry created a cybersecurity incident by exploiting his position of trust and accesses. This caused real harm to Company 1. Company 1 paid $143,419.38 to retain a third-party company to support its incident response; made the two Bitcoin payments to Curry described above; expended time and resources to react to Curry's demands; and incurred weeks of fear of reputational harm given the uncertainty of how the situation would end. The government anticipates a representative of Company 1 will be present at the sentencing hearing to provide a victim impact statement.

    B. <u>The Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, and to Protect the Public</u>

For the reasons set forth above, the circumstances of this case demand a significant sentence to promote respect for the law, provide adequate deterrence to the defendant and others, protect the public, and justly punish the defendant for his conduct. According to FBI reporting, cyber extortion continues to increase in frequency and the aggregate losses incurred by victims continue to rise.[2] These types of crimes are easily accomplished and highly effective and costly for individuals and organizations targeted. The sentence that the Court imposes for the defendant's conduct in this case will provide an important signal to others considering similar extortionate schemes; it is important they see that committing these crimes is not worth the risk.

    C. <u>The History and Circumstances of the Defendant</u>

The defendant is 26 years old and has lived in North Carolina his entire life prior to his arrest. PSR ¶¶ 61, 63. He reported a "stable" childhood and "smooth sailing life" despite some challenges in the household. *See* PSR ¶ 64. He has never been married, but reports previous

---

[2] Federal Bureau of Investigation Internet Crime Report 2023, https://www.ic3.gov/ AnnualReport/Reports/2023_IC3Report.pdf

romantic relationships.  PSR ¶ 65.  The defendant graduated high school and attended the University of North Carolina At Pembroke, where he obtained a Bachelor of Science in Computer Science in 2020.  PSR ¶ 86.  Defendant Curry has an established work history holding various positions from 2017 through 2023 at Coca Cola, Inc., IBM, and Company 1.  PSR ¶¶ 93-96.  The defendant reports he has been diagnosed with depression and receives a prescription and therapy to manage this diagnosis. PSR ¶¶ 75-76.  This case is his first exposure with the criminal justice system.  PSR ¶¶ 53-59.

### D. Unwarranted Sentencing Disparities

The District of Columbia Circuit Court has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges."  *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second.").  The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533.  A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007).

The government believes its recommended sentence for the defendant will avoid any unwarranted sentencing disparities given the statutory maximum is lower than the sentence contemplated by the Guidelines.

**RESTITUTION**

The government is requesting restitution in the amount of $150,961.18 to compensate the losses incurred by Company 1, to include the two Bitcoin payments made to Curry as well as the cost of retaining a third-party firm for incident response. The defendant agreed to pay this amount as part of his plea agreement. ECF No. 32 (Plea Agreement) at 8.[3]

**SPECIAL CONDITIONS OF SENTENCE**

The government requests that the defendant be ordered to participate in the Federal Prisons Industries Program during his period of incarceration. *See* PSR ¶ 113. The government further requests that the Court sentence the defendant to one year of supervised release, with the conditions that he undergo a mental health assessment and any recommended treatment, *see* PSR ¶¶ 75-78, and be ordered to stay away from and have no contact with Company 1.

**CONCLUSION**

For all the foregoing reasons, the government respectfully requests that the Court sentence the defendant to a total of 24 months in prison and one year term of supervised release with the above conditions. The government further requests that the Court order the defendant to pay restitution in the amount of $150,961.18.

Respectfully submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY
D.C. Bar No. 481866

---

[3] The defendant also agreed as part of his plea to the entry of a Consent Order of Forfeiture in the amount of $7,541.80, which was signed by this Court the day the plea was entered. *See* ECF No. 31.

/s/ *Joseph Misher*
Special Assistant United States Attorney
D.C. Bar No. 1619739
601 D Street, NW
Washington, D.C. 20530
(202) 658-8806
Joseph.misher@usdoj.gov

/s/ *Christine M. Macey*
CHRISTINE M. MACEY
Assistant United States Attorney
D.C. Bar No. 1010730
Fraud, Public Corruption, and
Civil Rights Section
601 D Street, NW, Room 5.1519
Washington, D.C. 20530
(202) 252-7058
Christine.Macey@usdoj.gov